2004 OK 61

**Deborah McCATHERN, Plaintiff–Appellant,**

v.

**CITY OF OKLAHOMA CITY, Defendant–Appellee.**

No. 98,735.

Supreme Court of Oklahoma.

July 6, 2004.

As Corrected July 13, 2004.

Rex D. Brooks, Oklahoma City, for Appellant.

William R. Burkett, Municipal Counselor, Orval Edwin Jones, Assistant Municipal Counselor, and Jami Jarnigan, Assistant Municipal Counselor, Oklahoma City, for Appellee.[1]

OPALA, V.C.J.

¶ 1 This certiorari presses two questions for our decision: (1) Did the terms of 51 O.S. Supp.1984 § 155(13), the Governmental Tort Claims Act (GTCA), which is urged to have enlarged the range of government's immunity from liability for negligent inspections, also alter the common-law principles of liability that bind the government? and (2) Did the trial judge err by giving summary judgment to the city? We answer the first question in the negative and the second in the affirmative.

## I.

### ANATOMY OF THE LITIGATION

¶ 2 Deborah McCathern (McCathern or appellant) alleges injuries sustained from a fall on 20 March 2001 when she tripped over an irrigation-system sprinkler head located adjacent to a sidewalk on the lawn of city hall, a government building owned by Oklahoma City (city or appellee).[2] She filed a negligence-based claim urging the city failed to maintain its premises with due care. McCathern asserts that although the irriga-

tion system was not in use at the time of her injury, its head had not receded and was protruding two or three inches above the lawn. The sprinkler head is located immediately adjacent to a sidewalk corner. A type of decorative grass, commonly called "monkey grass or Liriope," surrounds the sprinkler head. McCathern presented proof (by evidentiary materials) that the ornamental grass was last cut back approximately three weeks earlier and that the city had performed repairs on the irrigation system around the same time.[3]

¶ 3 The city moved for summary judgment urging (1) it is immune by the terms of 51 O.S.2001 § 155(13),[4] the GTCA, from liability for failure properly to inspect its property to determine if it contains a safety hazard, (2) the sprinkler head which may have failed to retract and hence protruded two or three inches is a "trivial defect" which relieves the government from any liability and (3) the extended object is an "open and obvious" danger which the city has no duty either to correct or warn the public of its existence. The trial court gave summary judgment to the city. McCathern appealed.

¶ 4 The Court of Civil Appeals (COCA), Div. III, concluded the city was immune from liability and affirmed the trial court's summary judgment. Its opinion was bottomed on an earlier COCA pronouncement, *Reynolds v. Union Public Schools.*[5] *Reynolds*

---

1. Identified herein are only those counsel of the parties whose names appear on the certiorari briefs.

2. McCathern was en route to a proceeding in city hall when the accident occurred. The parties do not dispute that she stood in the status of an invitee.

3. The city's records indicate that on 5 February, 20 February and 6 March of 2001 either some installations or repairs were made to the irrigation system located on the city hall lawn. The records do not reflect the nature of the installation or repairs nor on which specific portion of the irrigation system the work was performed. Indicated by the records is bed maintenance on 26 February, 5 March and 23 March of that year. The city's maintenance supervisor's affidavit shows that the monkey grass was scalped in early March 2001.

4. The terms of 51 O.S.2001 § 155(13), the statute in effect at the time of McCathern's injury, provide:

"The state or a political subdivision shall not be liable if a loss or claim results from:
13. Inspection powers or functions, including failure to make an inspection, review or approval, or making an inadequate or negligent inspection, review or approval of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety, or fails to conform to a recognized standard;  * * * "

5. *Reynolds v. Union Public Schools*, 1998 OK CIV APP 101, 976 P.2d 557. *Reynolds* held a municipality was exempt from liability under the GTCA's inspection exemption when a trim ring on a public school's overhead light fixture fell on and injured Reynolds—despite plaintiff's attempts to define her case **as one of negligent maintenance rather than negligent inspection.** Although published, *Reynolds* did not receive precedential effect.

teaches that the government is exempt from liability where negligent maintenance is rested on the city's § 155(13) failure to discover by inspection the offending defect upon the premises—the so-called negligent-inspection exemption. McCathern sought certiorari.

¶ 5 During the pendency of her certiorari we promulgated *Moran v. City of Del City*.[6] *Moran* disapproved of *Reynolds* as an incorrect exposition of the applicable law insofar as the latter extended what we will refer to as the inspection immunity of § 155(13) to include within its ambit exemption of liability based on constructive or actual knowledge of defects upon the city's own property. When a petition for rehearing was pending in *Moran*, the city moved to consolidate this case with *Moran* and requested leave to file supplemental briefs. The rehearing petition and the city's motion were denied. McCathern's certiorari petition was granted. Her cause was remanded to COCA for reconsideration of its earlier pronouncement in light of *Moran*. Whether to accept supplemental briefs was to be left up to COCA.

¶ 6 COCA refused to authorize additional briefs, concluding the trial tribunal's summary judgment was improper (based on the urged post–1984 § 155(13) exemption). The city's two additional arguments, presented at nisi prius but not reviewed earlier, were then examined. COCA (1) rejected the city's argument that the protruding sprinkler head constituted a "trivial defect" and (2) ruled the evidentiary materials provided to the trial court tendered a disputed issue of whether the protruding sprinkler head could have been readily seen. Vacated was COCA's earlier decision affirming summary judgment and the cause was remanded for further proceedings to be consistent with the second opinion. The city's certiorari petition was then granted.

## II.

### ARGUMENTS ON CERTIORARI

¶ 7 The city contends that the trial court's summary judgment in its favor was proper because (1) an examination of antecedent § 155(13) legislation reveals the 1984 amendment enlarged the inspection immunity by diminishing a municipality's proprietary duty to inspect for defects in its own premises, (2) the city had no notice that the sprinkler head had not receded, and it was hence under no common-law duty to repair the defect or warn the public of its existence and (3) the defect, if it did exist as McCathern claims, is trivial, and the city is therefore relieved from any liability for the occasioned harm.

¶ 8 McCathern responds: (1) the city's argument dealing with earlier legislation presents a matter of first impression, and because it was not raised at nisi prius it may not be reached by this court, (2) the GTCA is the exclusive remedy regardless of whether the offending activity is governmental or proprietary,[7] (3) the city had sufficient notice of the malfunctioning sprinkler head to be charged with its knowledge and for liability to attach, and (4) the trial court's summary judgment is devoid of support in the submitted evidentiary material. Because the trial court's disposition was effected by summary judgment, the issues on review stand before us for *de novo* examination.[8]

### III.

### A.

**WHEN IT AMENDED THE TERMS OF 51 O.S.1981 § 155(13), THE LEGISLATURE DID NOT ABROGATE THE DUTY OF CARE THAT A MUNICIPALITY—*QUA* LANDOWNER—OWES UNDER THE COMMON–LAW RULES OF PREMISES LIABILITY**

¶ 9 The city urges that a review of the pre–1984 § 155(13) inspection immunity is

---

6. *Moran v. City of Del City*, 2003 OK 57, 77 P.3d 588. *Moran* teaches maintenance of city property differs from its § 155(13) inspection power and function; irrespective of its inspection immunity a municipality may be liable for negligent maintenance of its own property.

7. Appellant anticipated this argument from the city and addressed it in her brief. Because the

city did not raise this issue, we do not need to discuss it here.

8. *Mustain v. Grand River Dam Authority*, 2003 OK 43, ¶ 8, 68 P.3d 991, 994. *De novo* review is utterly nondeferential. It ascribes no deference to a lower tribunal's findings or conclusions. *Myers v. Missouri Pacific Railroad Co.*, 2002 OK 60, ¶ 9, 52 P.3d 1014, 1019.

necessary to understand the legislature's intent when drafting the 1984 exception. A consideration of statutory intent in light of antecedent legislation, according to the city, merits reconsideration or perhaps modification of the court's *Moran* pronouncement.

¶ 10 McCathern first contends that because the city's legislative-intent argument was never presented to the trial court it is not reviewable here.[9] Today's cause reaches us on certiorari.[10] Review of a COCA opinion by certiorari presents a matter of judicial discretion.[11] It is granted by a majority of the court when there are special and important reasons.[12] We granted certiorari and permitted supplemental briefing in order to pass upon the city's legislative-intent argument.

■ ¶ 11 In the course of the review process the city did not know that the antecedent of § 155(13) would become an issue. It arose *after* McCathern first petitioned for certiorari and was *necessitated* by the court's intervening pronouncement in *Moran.* The district court could not have known about this change in jurisprudence until after its summary judgment for the city. Before its re-examination of *Moran,* COCA chose not to allow supplemental briefs and, in accordance with our direction, reviewed its earlier decision in this case by the standards of *Moran.* This concatenation of events *created, in essence, an issue not correctable by any other tribunal.* The ensuing process thrusts on the city an element which militates in favor of permitting it to present the legislative-intent argument for the first time before an appellate tribunal. We hence accept supplemental briefs in support of this argument. To do less would impair a litigant's opportunity to meet a new issue and limit the city's right to be heard.[13]

■ ¶ 12 The city urges that an examination of the § 155(13) language reveals that in 1984 "[t]he *governmental* function of safety inspection was **expressly** enlarged to include [added immunity for the city's] breach of the duty to inspect the public's own property." [14] Under § 155(13)'s pre–1984 language a city was liable solely for negligent inspection of

9. Appellant contends first-instance determinations of law or fact are the province of the trial court. *Dyke v. St. Francis Hosp. Inc.,* 1993 OK 114, ¶ 11, 861 P.2d 295, 299–300; *Hadnot v. Shaw,* 1992 OK 21, ¶ 15, 826 P.2d 978, 983. An appellate court cannot on review take notice of any material that was not properly before the trial court. *Hart v. McVay,* 1992 OK 47, ¶ 14, 832 P.2d 822, 825; *McGhee v. McAllister,* 1970 OK 152, ¶ 5, 474 P.2d 940, 941.

Appellant acknowledges that certiorari review is discretionary but nonetheless urges that examination of today's case is not in conformance with the rules that govern Supreme Court review. She urges that COCA's decision on remand has not departed from the law settled by *Moran* and our review is unnecessary. The text of Rule 1.178(a)(4), Review by the Supreme Court, provides:

"(a) Reasons for Certiorari.

A review of an opinion of the Court of Civil Appeals in the Supreme Court on writ of certiorari ... is a matter of sound *discretion* ... and will be granted only when there are special and important reasons and a majority of the justices direct that certiorari be granted. The following, while neither controlling nor fully measuring the Supreme Court's discretion, indicate the character of reasons which will be considered.

* * *(4) Where the Court of Civil Appeals has so far departed from the accepted and usual course of judicial proceedings or so far sanc- tioned such procedure by a trial court as to call for the exercise of this Court's power of supervision.* * * " (Emphasis supplied)

10. For the terms of Rule 1.178, Oklahoma Supreme Court Rules, see *supra* note 9.

11. For the terms of Rule 1.178, Oklahoma Supreme Court Rules, see *supra* note 9.

12. For the terms of Rule 1.178, Oklahoma Supreme Court Rules, see *supra* note 9.

13. The core element of due process is the right to be heard. *Booth v. McKnight,* 2003 OK 49, ¶ 18, 70 P.3d 855, 862 (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).

14. Appellee's supplemental brief on certiorari, p. 8.

The text of 51 O.S. Supp.1984 § 155(13) provides:

"The state of a political subdivision shall not be liable if a loss or claim results from:

* * *13. Inspection powers or function, in- cluding failure to make an inspection, or mak- ing an inadequate or negligent inspection, *of any property, real or personal,* to determine whether the property complies with or violates any law or contains a hazard to health or safety;" (Emphasis supplied)

its own property.[15] This exemption, according to the city, was clearly not a landowner exemption because it included only premises "other than the property of the political subdivision." [16] The 1984 enactment (which renamed the act as the GTCA) altered the § 155(13) language to expand the city's immunity by including its own property.[17] Because of this textual change, we are urged, governmental negligence in the inspection of the city's own premises (which would have resulted in liability before 1984) would now be immunized and require a judgment against the plaintiff under the revised post–1984 text of § 155(13). According to the city, *Moran*—which abridges the range of a municipality's immunity—incorrectly returns governmental entities to their pre–1984 position.[18] We are told that maintenance functions are not the issue in these premises liability cases.[19] The government, according to the city, is not avoiding its duty to maintain its property.[20] It is resisting the court's imposition of a shopkeeper's duty—that of finding allegedly dangerous property conditions. That standard requires it to *inspect*

continually all of its property.[21] In sum, the city urges that the "should have known" standard of premises liability—that of constructive knowledge of defects—is precisely what the legislature intended to eliminate in its GTCA amendment of 1984.[22] It argues that summary judgment in its favor was correctly granted because by the amendment's language (that enlarged the inspection immunity) the legislature reduced the duty of a government unit from that of being responsible for what it "should have known" to that of being immune from premises liability for failure to know of unknown defects in its own property.[23]

¶ 13 Municipal liability for harm arising from the condition of streets, sidewalks or other public ways is governed by a modified form of common law's general negligence known as premises liability. The principles which are applicable to municipalities are neither identical to nor co-extensive with general premises liability.[24] They cast on landowners the obligation to exercise ordinary and reasonable care to keep the public ways in a reasonably safe condition for public

15. The text of 51 O.S. Supp.1981 § 155(13)—that enactment in force prior to the 1984 amendments and titled the Political Subdivision Tort Claims Act (PSTCA)—provides:
   "A political subdivision or an employee acting within the scope of his employment shall not be liable if a loss results from:
   * * * 13. Inspection powers or functions, including failure to make an inspection, or making an inadequate or negligent inspection, *of any property other than the property of the political subdivision* to determine whether the property complied with or violates any law or contains a hazard to health or safety;" (Emphasis supplied)

16. City's supplemental brief, p. 7. For the terms of 51 O.S. Supp.1981 § 155(13) see *supra* note 15.

17. For a comparison of the 1984 and pre–1984 § 155(13) texts, see *supra* notes 14 and 15.

18. Appellee urges that in *Moran* what is described as a landowner's obligation—to be familiar with its property—is actually a business owner's obligation. The general property owner has no duty to inspect. (Appellee's petition for certiorari, p. 9) The city urges that an exemption for liability that requires the government to exercise the duty of care applied to land owners as opposed to that applied to business owners hardly

presents an end to government liability across the board. (Appellee's supplemental brief, p. 10)

19. Appellee's supplemental brief, p. 10

20. Appellee's supplemental brief, p. 10.

21. In *Moran* and the instant case, contends the city, plaintiffs were fighting an obsolete battle—whether the municipality had breached its "ministerial" duty to mow the grass on its own property and thus to discover alleged property hazards. (Appellee's supplemental brief, p 10) It buttresses its argument by noting the heavy burden the *Moran* decision places on the city and urges that actual notice is a more workable standard for local governments when dealing with premises liability cases. Appellee compares the § 155(13) text with the duty-to-inspect language found in § 155(16) (that deals with roadway markings and traffic signals) and notes the latter is clearly imposed vis-a-vis legal terms of art in contrast to the § 155(13) text. (Appellee's supplemental brief, p. 11)

22. Appellee's supplemental brief, p. 10.

23. Appellee's supplemental brief, p. 12.

24. *Byford v. Town of Asher,* 1994, OK 46, ¶ 8, 874 P.2d 45, 52 (Opala, J., concurring).

travel.[25] The law does not make a municipality a guarantor of safe or unharmed travel.[26] Its duty is rather to remedy dangerous defects 1) in a reasonable time upon receiving actual notice of their existence or 2) where the condition is shown to have existed for a sufficient length of time and under circumstances which would raise an inference that the defect ought to have been discovered (constructive notice) and either secured or repaired.[27] *Unlike ordinary (private) premises liability this regime of premises liability allows no room for entrant classification. The same duty of care extends to all persons injured on public ways.*[28]

¶ 14 The city's argument is, in essence, that the duty of care it owes an individual must turn on our construction of the legislature's intent when amending § 155(13) in 1984.

¶ 15 The common-law doctrine of sovereign immunity was abrogated in 1983 by *Vanderpool v. State.*[29] The legislature responded by adopting the GTCA, which compiled its own version of sovereign immunity for the state, its political subdivisions and for all their employees acting within the scope of employment. Governmental immunity of the state and its political subdivisions is waived "only to the extent and in the manner provided" in the Act.[30] ***Subject only to the Act's specific limitations and exceptions, the GTCA extends governmental accountability to all torts for which a private person or entity would be liable.***[31] The legislature retained in force certain forms of immunity from liability by providing in § 155 thirty-two carefully circumscribed exempted areas.

¶ 16 The city's argument is unconvincing. Our review of the statutory texts show no intent to reduce the duty of care that is to be exercised by a political unit *qua* landowner.[32] The cardinal rule of statutory construction calls for a judicial search to ascertain legislative intent.[33] By the mandate of 12 O.S.2001 § 2[34] the common law remains in full force unless modified by the constitution, statutes

---

**25.** *Rider v. City of Norman,* 1970 OK 200, ¶ 5, 476 P.2d 312, 313; *Evans v. City of Eufaula,* 1974 OK 116, ¶ 25, 527 P.2d 329, 332, *Byford, supra* note 24, at ¶ 8 at 52.

**26.** *Rider, supra* note 25, at ¶ 5 at 313; *Byford, supra* note 24, at ¶ 8 at 52.

**27.** *Rider, supra* note 25, at ¶ 5 at 313; *Evans, supra* note 25, at ¶ 26 at 332; *Byford, supra* note 24, at ¶ 8 at 52 (Opala, J., concurring).

**28.** *Byford, supra* note 24 at ¶ 7 at 52 (Opala, J., concurring).

**29.** *Vanderpool v. State of Oklahoma Historical Society,* 1983 OK 82, ¶ 19, 672 P.2d 1153, 1156–57 (vitalized by the enactment of the Governmental Tort Claims Act, 51 O.S. Supp.1984 *et seq.*).

**30.** The text of 51 O.S.2001 § 152.1(B) provides:

"The state, only to the extend and in the manner provided in this act, waives its immunity and that of its political subdivisions.* * * *"

**31.** The terms of 51 O.S.2001 § 153 provide:

"A. The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. * * *"

The terms of 51 O.S.2001 § 152(11) define a tort as:

"* * * 'Tort' means a legal wrong, independent of contract, involving violation of a duty imposed by general law or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment."

**32.** The city is both a governmental unit and a landowner. The 1984 amendment dealt with the city as a governmental unit that exercises powers and functions of property inspection, whereas we are dealing in this lawsuit, as well as we did in *Moran,* with the city as a landowner. Without clear legislative direction, these two capacities cannot be intermixed.

**33.** *Nelson v. Pollay,* 1996 OK 142, ¶ 6, 916 P.2d 1369, 1373 (citing *Anderson v. Eichner,* 1994 OK 136, ¶ 11, 890 P.2d 1329, 1336 n. 15); *So–Lo Oil Company, Inc. v. Total Petroleum, Inc.,* 1992 OK 71, ¶ 8, 832 P.2d 14, 18; *Humphrey v. Denney,* 1988 OK 69, ¶ 8, 757 P.2d 833, 835; *Matter of Phillips Petroleum Co.,* 1982 OK 112, ¶ 5, 652 P.2d 283, 285; *Lancaster v. State,* 1967 OK 84, ¶ 6, 426 P.2d 714, 716; *State v. Dinwiddie,* 1939 OK 406, ¶ 10, 95 P.2d 867, 869 (1939).

**34.** The terms of 12 O.S.2001 § 2 state:

"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall

or judicial decisions. A presumption favors preservation of common-law rights.[35] **The common law, which may not be abrogated by mere implication, undergoes alteration (or abrogation) solely when the intent to do so is clearly and plainly expressed.[36] An ambiguous legislative text is insufficient as a basis for the common law's abrogation.[37]**

¶ 17 The central principle embodied by the GTCA is that private tort law is neither abridged nor enlarged by that act.[38] Rather, it is made applicable to governmental entities by the state's waiver of sovereign immunity, *unless of course otherwise statutorily laid down.*[39] *Only when the legislature expressly provides for an exemption from liability is a governmental subdivision given immunity from common-law tort.*[40] The terms of the amended § 155(13) text do not *explicitly* fashion greater defenses against premises liability claims than those which stand established by the common law. If the legislature did indeed intend to provide for government units an enhanced immunity shield from premises liability (beyond the scope of protection afforded them by the common-law norms), its objective remains unexpressed. **We will not abridge governmental tort responsibility by legislative text that is ambiguous or silent.[41]** Although silence is present, there is here no textual ambiguity. Appellee's interpretation of the GTCA extends the Act's objective beyond its intended sphere. Its terms merely broadened the statute's scope only by in-

cluding within its purview all property inspected by and *qua* governmental units, whether belonging to the government or a third party, and by including personal property as well. **Nothing in the GTCA reflects a legislative intent to abrogate (or diminish) either the duty of care that governs premises liability or the standard of care the government owes to an individual.**

¶ 18 Neither do we see a jurisprudential basis for modifying the common-law premises liability to lower municipal responsibility for substantial defects. The city's advanced argument for seeking relief—that the burden of having "constructive notice" of defects will have a detrimental impact on city operations and "actual notice" will provide a better, more workable standard—reflects a policy the city prefers but not that which we may divine as established by the GTCA. If the common law is to be abrogated or modified, it must be done by creation of clearly expressed legislative immunity, not by the court's fiat. **In sum, the standard of care to which a municipality is to be held in premises liability remains unaltered by the 1984 version of the GTCA.**

### B.

### AN IRRIGATION–SYSTEM SPRINKLER HEAD LOCATED ADJACENT TO A SIDEWALK DOES NOT, AS A MATTER OF LAW, CONSTITUTE A TRIVIAL DEFECT

¶ 19 The city urges that COCA erred by limiting application of the "trivial defects"

remain in force in aid of the general statutes of Oklahoma; ..."

35. The common law forms "a dynamic and growing" body of rules that changes with the conditions of society and hence may be modified from time to time. *Brigance v. Velvet Dove Restaurant, Inc.*, 1986 OK 41, ¶ 11, 725 P.2d 300, 303; *State v. One 1965 Red Chevrolet Pickup*, 2001 OK 82, ¶ 13, 37 P.3d 815, 820; *State Mut. Life Assur. Co. Of America v. Hampton*, 1985 OK 19, ¶ 3, 696 P.2d 1027, 1036 (Opala, J., concurring); *Brashier v. Farmers Ins. Co., Inc.*, 1996 OK 86, ¶ 8, 925 P.2d 20, 24 (overruled in part on another issue); *Reaves v. Reaves*, 1905 OK 32, ¶ 14, 82 P. 490, 494, 15 Okl. 240.

36. *Brashier supra* note 36, at ¶ 8 at 24; *Tate v. Browning–Ferris*, 1992 OK 72, ¶ 11, 833 P.2d 1218, 1225–26; *Silver v. Slusher*, 1988 OK 53, ¶ 10, 770 P.2d 878, 884; *Hampton, supra* note 35, at ¶ 3 at 1036 (Opala J., concurring); *Ricks*

*Exploration v. Okl. Water Resources Bd.*, 1984 OK 73, ¶ 12, 695 P.2d 498, 504.

37. *Tate, supra* note 36, at ¶ 11 at 1226; *Reaves, supra* note 35 at ¶ 14 at 495.

38. *Hughey v. Grand River Dam Authority*, 1995 OK 56, ¶ 5, 897 P.2d 1138, 1141.

39. *Hughey, supra* note 38, at ¶ 5 at 1141; *Jarvis v. City of Stillwater*, 1983 OK 88, ¶ 10, 669 P.2d 1108, 1111 (statutorily abrogated on other grounds).

40. Unless explicitly immunized by law, a political subdivision is liable in tort. *Jarvis, supra* note 39, at ¶ 10 at 1111. We will not presume municipal immunity from a legislative text that is silent, doubtful or ambiguous. *Jarvis*, at ¶ 10 at 1111.

41. *Jarvis, supra* note 39, at ¶ 10 at 1111.

doctrine to paved areas such as sidewalks. It contends that slight defects are not actionable under premises liability standards regardless of where they occur.[42] **The city misconstrues COCA's opinion.** It neither limited nor enlarged the geographic area to which the trivial defects doctrine will apply but merely ruled that a protruding sprinkler head in this case is not, as a matter of law, a trivial defect. We agree.

■ ¶ 20 A municipality will not be liable for every defect or obstruction in its public ways.[43] It is answerable only for negligence in failing to repair, remove or guard against substantial (as distinguished from slight or trivial) defects or obstructions after actual or constructive notice of their existence is established.[44] Whether a defect is trivial is to be gauged by the objective standard of a reasonably prudent person.[45] If prudent persons cannot anticipate danger from the defect's presence, and yet an accident does occur, the question of the city's liability is one of law.[46] Where the defect is of such character that careful or prudent persons might reasonably differ as to wheth-

er an accident could or should have been anticipated, the question of the city's liability is one of fact.[47]

■ ¶ 21 McCathern alleges that her fall was caused by an **unexpected masked protrusion** adjacent to the sidewalk. Extant jurisprudence fails to disclose the presence of a definite yardstick by which a "trivial defect" may be measured.[48] Although it was daylight, McCathern claims her view of the sprinkler head was not "open and obvious" because the surrounding ornamental grass obstructed her view.[49] We cannot say, as a matter of law, that a protruding sprinkler head adjacent to a sidewalk corner is an obstruction that is so slight or trivial that a reasonable person would not expect it to create a hazard or danger to pedestrians present on the walkway. A municipality's duty to exercise reasonable care is not confined within the exact lines followed by the public in passing over the sidewalks.[50] Its responsibility is to protect the public in the use of its sidewalks from dangers near or within close proximity to the pathway.[51]

---

**42.** The city further urges the trivial defects "doctrine actually arises as another description of the duty of care." "In other words, only defects that are not trivial are actionable." (Appellee's supplemental brief, p. 13) Appellee's definition of a legal "duty of care" is not well taken.

**43.** *Rider, supra* note 25, at ¶ 5 at 313; *Evans, supra* note 25, at ¶ 26 at 332; *Byford, supra* note 24, at ¶ 9 at 52–53 (Opala, J., concurring).

**44.** *Rider, supra* note 25, at ¶ 5 at 313; *Evans, supra* note 25, at ¶ 25 at 332; *Byford, supra* note 24, at ¶ 9 at 52–53 (Opala, J., concurring).

**45.** *Rider, supra* note 25, at ¶ 5 at 313; *Evans, supra* note 25, at ¶ 26 at 332; *Byford, supra* note 24, at ¶ 9 at 52–53 (Opala, J., concurring).

**46.** *Rider, supra* note 25, at ¶ 5 at 313; *Evans, supra* note 25, at ¶ 27 at 332; *Byford, supra* note 24, at ¶ 9 at 52–53 (Opala, J., concurring).

**47.** *Rider, supra* note 25, at ¶ 5 at 313; *Evans, supra* note 25, at ¶ 28 at 332; *Byford, supra* note 24, at ¶ 9 at 52–53 (Opala, J., concurring).

**48.** A sidewalk hole approximately three inches deep and ten inches wide was not held, as a matter of law, to be a slight defect. *City of Tulsa v. Lewis,* 1941 OK 275, ¶¶ 12–13, 117 P.2d 784, 786. A hole in a sidewalk one-inch deep and three to eight inches wide was held a slight or

trivial defect. *City of Marietta v. Bigham,* 1945 OK 282, ¶ 7, 162 P.2d 999, 1000. The trial court did not err in refusing to apply the trivial defects doctrine to a protruding meter box on an unpaved, well-beaten pathway known by the city to be used by pedestrians. *Oklahoma City v. Marshall* 1946 OK 195, ¶ 4, 169 P.2d 1020, 1021, 197 Okl. 302. A defect in steps created by earth and grass roots causing the steps to vary in depth three to six inches was not a trivial defect. *City of McAlester v. Nelson,* 1960 OK 262, ¶ 8, 357 P.2d 995, 996.

**49.** The city, in its certiorari materials, did not contest COCA's ruling that the sprinkler head in contest here constituted a question of fact as to whether the nature of the defect was "open and obvious." An issue tendered and decided on appeal but not reasserted by petition or counter-petition for certiorari stands abandoned. See the provision of Rule 1.180(b), Supreme Court Rules, 12 O.S.2001, Ch. 15, App.1; *Hough v. Leonard,* 1993 OK 112, ¶¶ 15–16, 867 P.2d 438, 445–46.

**50.** *City of Holdenville v. Talley,* 1952 OK 34, ¶ 13, 240 P.2d 761, 763 (citing *City of Muskogee v. Roberts,* 1943 OK 235, ¶ 20, 141 P.2d 100, 102–03; *Oklahoma City v. Stewart,* 1932 OK 108, ¶ 7, 8 P.2d 30, 32, 155 Okl. 37).

**51.** *Talley, supra* note 50, at ¶ 13 at 763.

## C.

### BECAUSE THE CITY COULD HAVE RAISED AT NISI PRIUS (BUT DID NOT DO SO) LACK OF NOTICE OF THE MALFUNCTIONING SPRIN-KLER HEAD, WE REFRAIN FROM REVIEWING THIS ISSUE

¶ 22 The city's final argument is that it lacked notice of the malfunctioning sprinkler head. Lack of notice is an on-the-merits defense against the claim. It may be raised by pleadings, by argument presented at a hearing or by tendering appropriate evidentiary material. Here it was neither pled nor called to the trial court's attention as a disputed issue on the merits during the court's summary process of adjudication. Because this issue, unlike the city's legislative-intent argument, **could and should** have been raised before the trial court, we decline to depart from our usual course to permit its review here.[52]

## IV.

### SUMMARY

¶ 23 The city's argument—that the legislature's 1984 enlargement of the GTCA's § 155(13) inspection immunity to include **all property inspected by and** *qua* **governmental units** also altered the common-law standards of premises liability then applicable to these cases—is hollow. **Abrogation of the common law must be explicit, unambiguous and the government's immunity conferred by doubt-free language.** Our review of the tendered statutory text reveals no divinable indicia of intent to reduce the duty of care imposed upon municipal landowners by the common law. Neither do we find validity in the city's contention that a raised sprinkler head adjacent to a sidewalk constitutes, as a matter of law, a slight or trivial defect for which the city bears no liability to one injured by the part's failure to recede.

¶ 24 On certiorari previously granted upon the city's petition, the Court of Civil Appeals' opinion is vacated; the trial court's summary judgment is reversed and the cause remand-

ed for further proceedings to be consistent with today's pronouncement.

¶ 25 WATT, C.J., OPALA, V.C.J., HODGES, KAUGER, BOUDREAU and EDMONDSON, JJ., concur.

¶ 26 LAVENDER, HARGRAVE and WINCHESTER, JJ., dissent.

---

52. See *supra* note 9 for denying review upon issues not raised at nisi prius.