[No. 9854. Department Two. May 1, 1912.]

## JOHN KIRCHHOFFER et al., Appellants, v. MATTIE S. HARRIS et al., Respondents.[1]

ADVERSE POSSESSION—MISTAKEN BOUNDARY LINE—EVIDENCE—SUFFICIENCY. The evidence is sufficient to establish title by adverse possession where grantors, before selling part of their lands, had a survey made to mark the boundaries which by mistake was so run as to include part of the lands sold, erected fences on the line marked by the survey, made valuable improvements to the line, maintaining open and notorious possession for twenty-five years of portions of the land included in their deed, under the mistaken belief that the survey marked the true line; and it is an immaterial circumstance that, for a time, they looked after the lands not included in their enclosure, and acted as agents of the grantees as to the lands not claimed by them.

ADVERSE POSSESSION—CONTINUOUS POSSESSION—INTERRUPTION BY PUBLIC AUTHORITIES. Title by adverse possession of a tract of land for the statutory period is not affected by the fact of an involuntary interruption of possession by the public authorities in laying out a county road across one end of the tract, after which fences were changed, leaving part of the property outside of the enclosure, when their title would have been complete but for such interruption.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered May 1, 1911, upon findings in favor of the defendants, in an action of ejectment, after a trial to the court. Affirmed.

*Happy, Winfree & Hindman,* for appellants.

*Graves, Kizer & Graves,* for respondents.

[1]Reported in 123 Pac. 455.

FULLERTON, J.—Sometime prior to the year 1883, the respondents E. R. Laughbon and wife acquired title to certain lands, described according to the government surveys as lot 1, in section 20, and the northeast quarter of the northwest quarter, the south half of the northwest quarter, and lot 1 of section 21, all in township 24, north, of range 41, east of the Willamette meridian. On May 8, 1883, they conveyed lot 1, of section 20, and the south half of the northwest quarter of section 21, to the appellant John Kirchhoffer. Without the use of maps, which cannot well be reproduced here, it is somewhat difficult to describe the lot conveyed, but it was a narrow strip of land lying between the section line marking the west boundary of the northwest quarter of section 21 and a body of water known as Silver Lake. The tract extended for the full width of the south half of the quarter section, and for a distance of 398.7 feet along the fractional north half thereof. The distance to the lake across the lot, measuring from the northwest corner of south half of the quarter section, was some 200 feet. The portion of the lot lying north of this line was somewhat irregular in shape having an average width of perhaps 200 feet and an average length of 400 feet.

Prior to the time the respondents conveyed to the appellant John Kirchhoffer, and in anticipation thereof, the respondents procured the county surveyor to run the line between the land they intended to retain and the land they purposed conveying to Kirchhoffer. In running the line, the surveyor conceived that that portion of lot 1 in section 20, lying west of the north half of the quarter section (the irregular shaped tract before mentioned), to be a part of lot 1 in section 21, and consequently in running the line between the lots he ran west to the lake from the northwest corner of the south half of the northwest quarter of section 21, instead of running north therefrom as he properly should have done. The respondents shortly thereafter built a fence along the line of the survey, which fence has been kept up

since it was originally constructed. This fence begins at the proper point on the east line of the quarter section but as it approaches the west it varies south from the true line, reaching its maximum distance therefrom some 28 feet on the west side of the quarter section. This fence forms a part of the respondents' enclosure. They have had open and notorious possession of the land lying to the north of it and have maintained such possession since 1883. In the meantime they have cultivated and otherwise improved the land so enclosed. The house erected upon the premises stands partly upon lot 1 in section 20, and the orchard and certain small fruits and berries stand in part on the land enclosed from the south half of the quarter section in section 21, and lot 1 in section 20.

The present action was begun in February, 1911, by the Kirchhoffers, to recover from the respondents the land in lot 1 of section 20, and that part of the south half of the northwest quarter of section 21 that the respondents have within their enclosure. To the complaint, which was in the usual form in such cases, the respondents answered setting up the statute of limitations. The trial resulted in a judgment in favor of the respondents.

The evidence introduced at the trial makes it clear that the respondents never intended to convey to the appellants any part of the land included within their enclosure. On the contrary, they thought that the land they conveyed lay to the south thereof, and that it marked the true boundaries of the remaining land. That they reached this conclusion in good faith is evidenced by the fact they procured the county surveyor to mark the boundaries of their land before erecting the fences, and erected the fences on the lines he gave to them. It appears now that the surveyor made a mistake, but this fact was not known to the respondents at the time, nor for many years thereafter, during which time they made valuable improvements upon the property, which improvements extended over and onto the enclosed land which

is now shown to be included within the deeds of conveyance to the appellants. The respondents' possession has been actual, open and notorious and under a claim of right for more than twenty-five years. This is sufficient, under the rule as we have heretofore announced it, to give them title, unless circumstances have intervened to estop them from taking advantage of the rule.

The appellants assert that there are such circumstances. They argue that the record discloses that the respondents were in possession of the whole tract conveyed as the appellants' tenants up to the year 1898, and as grantors in possession until the commencement of the present action; that while they were in possession they acted as the appellants' agents for the sale of wood and timber taken therefrom; that when they enclosed the land they acted as appellants' tenants and agents in possession, and consequently cannot claim that their possession was adverse, and that they never gave notice that they claimed the land adversely. But as we view the record, the evidence does not justify these conclusions. It is true that the respondents after the sale, looked after the land in the appellants' interest; that they planted a garden thereon for some years, set out fruit trees and berry bushes thereon, and took the produce therefrom in payment for their labor; and at one time superintended the cutting and sale of some wood. But none of these acts had to do with the land within their enclosure which they thought and claimed was their own. They planted no trees, no garden thereon as land of the appellants. Their acts with relation to such lands were acts of proprietors, not of tenants and agents of another. The respondents were, therefore, never tenants or agents of the appellants for the land in dispute. This land they at all times claimed to own, and hence did not make any agreement with reference thereto. The facts here are akin to those in *McCormick v. Sorenson*, 58 Wash. 107, 107 Pac. 1055, 137 Am. St. 1047, where we said:

"In their brief the appellants contend that as Taylor and wife, the grantors of respondents, purchased from Mottman with the intention of securing lots 1 and 2, and by mistake encroached upon lots 3 and 4, they cannot predicate their claim of title by adverse possession on such mistake; that it is immaterial whether the mistake was an honest one; that it was in any event simply a mistake as to the location of the property purchased; that it never was the intention of respondents, or any of their grantors, to occupy any property other than lots 1 and 2; that they at no time asserted title to any portion of lots 3 and 4, and that they cannot in this action successfully claim title thereto by adverse possession, never having made any claim of right to any portion of lots 3 or 4. . . .

"While it is true that Taylor originally made a mistake in fixing the lines, and by reason thereof unintentionally entered into the possession of lot 3 and part of lot 4, it is nevertheless apparent from the evidence that his possession thus obtained was immediately followed by a claim of right to the land; that he and his grantees erected a dwelling house and other buildings; that they planted fruit trees and otherwise improved the place; that each of the subsequent purchasers, before buying, went upon the property, saw the inclosure and improvements, intended to acquire the identical land so inclosed and improved, and that their mistake was not as to the particular land claimed or purchased, but as to its true description. These acts, which continued without interruption for a period of more than ten years, and until the commencement of this action, certainly evinced an assertion of permanent proprietorship on the part of respondents and all of their grantors, back to and including Taylor, and constituted notice to the real owners."

We conclude, therefore, that the appellants have a clear title by adverse possession.

Some ten years or more after the conveyance, the county of Spokane laid out and opened a wagon road following the sinuosities of the lake on the west side of lot 1, in section 20. After the road was opened, the fence on the east side thereof seems to have marked the respondents' enclosure. The appellants contend that the part of lot 1 included within the roadway has not been held adversely to it since the road was

constructed, and that the judgment of the court which awarded to the respondents all of that portion of the lot lying to the west of lot 1, in section 20, should be modified so as to exclude therefrom the road and the portion of the lot lying west of the road, if any. But the respondents lost no rights by the involuntary interruption of their possession by the public authorities; and since their title would have been complete but for such interruption, it is not affected thereby.

The judgment is affirmed.

DUNBAR, C. J., ELLIS, MOUNT, and MORRIS, JJ., concur.