Omer SEARS, Evelyn Sears and State of Oklahoma ex rel. Commissioners of the Land Office of Said State, Plaintiffs in Error,

v.

William H. FAIR and Emma May Fair, Defendants in Error.

No. 40600.

Supreme Court of Oklahoma.

Nov. 4, 1964.

Wheatley & Wheatley, Vinita, for Omer Sears et ux.

R. H. Dunn, N. A. Gibson, Francis Stewart, Oklahoma City, for Commissioners of Land Office, plaintiffs in error.

William W. Bailey, Vinita, for defendants in error.

HALLEY, Vice Chief Justice.

Defendants in error (plaintiffs below) commenced this action on the 14th day of March, 1961, in the District Court of Craig County, Oklahoma, against plaintiffs in error, Omer Sears, Evelyn Sears (wife of Omer Sears), and the State of Oklahoma ex rel. Commissioners of the Land Office (defendants below), to quiet their title to a narrow strip of land in that County. Defendants in error will be referred to as "plaintiffs" and plaintiffs in error will be referred to collectively as "defendants" or individually as "Omer and Evelyn Sears" and "Commissioners".

Plaintiffs amended petition alleged in substance that they acquired title by War-

ranty Deed to the Southeast Quarter (SE¼) of the Southwest Quarter (SW¼) of Section 33, Township 28 North, Range 18 East, in Craig County, Oklahoma, on the 31st day of December, 1954, at which time Omer and Evelyn Sears were in possession of the adjoining Northeast Quarter (NE¼) of the Southwest Quarter (SW¼) of said Section. Plaintiffs further alleged a fence, constructed prior to 1914, established a recognized boundary line between the two forty acre tracts; neither plaintiffs nor defendants actively participated in building the original fence; and it had never been changed or moved, notwithstanding repairs, since original construction thereof. Plaintiffs alleged they acquired title by prescription to that portion of defendants forty acre tract lying south of said fence by and through the exclusive, adverse, open, notorious, and continuous holding and possession of same, together with their predecessors in title, for more than 15 years prior to filing their petition; and further because it had been recognized and acquiesced in as the correct boundary line by plaintiffs and their predecessors in title and defendants and their predecessors in title for more than 15 years. Plaintiffs prayed for judgment quieting title. Defendants answered by general denials.

The record evidence of title of the parties is uncontroverted. Defendants' forty acre tract was originally allotted to William Boone Woodall. On the 7th day of June, 1923, Woodall and wife conveyed same to B. J. Horn, the owner of plaintiffs' adjoining forty acre tract. Horn and heirs owned both forty acre tracts as a unit until 1933 or 1934.

Riley Vale and wife purchased plaintiffs' forty acre tract from a mortgage company in 1935, which had previously obtained title thereto through mortgage foreclosure on said tract. Thereafter by mesne conveyance, plaintiffs became the owners on the 31st day of December, 1954, and have continued so to date.

The Commissioners acquired title to the other forty acre tract on the 20th day of December, 1937, by Sheriff's Deed through foreclosure of its mortgage against the heirs of B. J. Horn. Omer and Evelyn Sears have been in possession of said tract since the Fall of 1940 through a Certificate of Purchase from said Commissioners. No patent has been issued by the Commissioners on said tract to Omer and Evelyn Sears.

A careful examination of the record leads to the inescapable conclusion that a division fence did exist between said forty acre tracts since 1915; and, as maintained and repaired without substantial change, has remained to the time of this litigation. The evidence further reflects that the owners of the two forty acre tracts pastured or cultivated their respective tracts up to the division fence to such an extent a ridge was built up beneath the entire fence row, making it approximately 18 inches higher than the soil on either side. No witness testified as to when the fence was actually erected or as to whom erected it. The record is further void as to the intentions and agreements, if any, of the party or parties erecting the fence.

Omer and Evelyn Sears caused a survey to be made before the institution of this action, at which time it was learned that the line of the fence did not correspond to the true boundary line dividing the two forty acre tracts according to the government survey. Actually the fence line on the east side began about 35 feet north of the true line, and as it proceeded westerly it veered to the south until it crossed the west boundary line about 24 feet north of the true line. Thus is involved a wedge-shaped tract one-fourth mile long, 35 feet wide at one end and 24 feet wide at the other out of defendants' forty acre tract.

The cause was tried to the court without a jury resulting in a judgment for plaintiffs quieting their title to the wedge-shaped tract lying south of the boundary line fence dividing the Northeast Quarter (NE¼) of the Southwest Quarter (SW¼) from the Southeast Quarter (SE¼) of the Southwest Quarter (SW¼) of Section 33,

Township 28 North, Range 18 East, in Craig County, Oklahoma, against the defendants and each of them. Defendants appeal the adverse judgment and as grounds for reversal assign ten specifications of error under two general propositions. Defendants' second proposition is that the Commissioners held legal title to the realty involved herein as public property; and title thereto could not be acquired under 60 O.S.1961, § 333. Our determination of the second proposition in defendants' favor is decisive and makes it unnecessary for us to consider their first proposition.

Title by prescription in this matter could not have begun to run until 1933 or 1934. The statutory provisions regarding the acquisition of title by prescription are 60 O.S. 1961, § 333 and 12 O.S.1961, § 93(4). Therefore, for plaintiffs to have acquired title to the disputed tract by prescription since 1933, it necessarily would have had to run during that period title was in the Commissioners or Omer and Evelyn Sears.

▆▆▆ The general rule is that title by prescription may be acquired against all persons, except those excepted from the operation of the statute of limitations. In this State the statute of limitations is not operative against the State or its subdivisions where public rights are involved. The determining factor is whether the right affected is a private right or a public right. The test as to whether a matter is a public right or a private right appears to be whether the right is such as to affect the public generally or to merely affect a class of individuals within the political subdivision. Herndon v. Board of Com'rs in and for Pontotoc County, 158 Okl. 14, 11 P.2d 939; Merritt Independent School Dist. No. 2 of Beckham County v. Jones, 207 Okl. 376, 249 P.2d 1007.

The Commissioners of the Land Office have charge of the sale, rental, disposal and managing the school lands and other public lands of the State, and the funds and proceeds derived therefrom by Art. VI, Section 32, of our Oklahoma Constitution and by 64 O.S.1961, § 1. They are directed to invest the permanent school funds and other educational funds in first mortgages upon farm lands within the State and in other securities by 64 O.S.Supp.1963, § 51, under the rules and regulations set out in 64 O.S.Supp.1963, § 52. The Commissioners are further authorized by 64 O.S. 1961, § 59, to foreclose on such mortgages deemed necessary; and offer for sale and sell all lands acquired by foreclosure under 64 O.S.1961, § 94. The Commissioners can only sell the realty so acquired by complying with the rules and regulations prescribed by the Legislature in 64 O.S.1961, §§ 95 and 96. State ex rel. Commissioners of Land Office v. Phillips Petroleum Co., Okl., 258 P.2d 1193; State ex rel. Commissioners of Land Office v. Bright, Okl., 261 P.2d 875. The interest and income accruing from said investments are made available to public institutions, including the common schools in the State under Art. II, Section 2, of our Oklahoma Constitution, 64 O.S.1961, § 351 and 70 O.S.1961, §§ 611, 614 and 615.

We think the case of Board of Com'rs of Woods County et al. v. State ex rel. Commissioners of Land Office et al., 125 Okl. 287, 290, 257 P. 778, 781, 53 A.L.R. 1128, is helpful here. There we held as follows:

"We do not think the state was engaged in a private enterprise in loaning the school fund on real estate mortgages for the reason of the mandatory provisions of the Constitution. The state was performing a governmental function, to which it was bound, which it pledged its faith to perform before it came into existence as a state. * * *"

In Goodin v. Commissioners of Land Office, 174 Okl. 364, 366, 50 P.2d 189, 191, we stated:

"* * * We have held that the School Land Commission, in administering the affairs of its office and the lands in connection therewith, is acting in and performing a governmental function. * * *"

In State ex rel. Land Office Com'rs v. Hall et al., 191 Okl. 257, 128 P.2d 838, we said:

"*  *  * The state is performing a governmental function and engaged in a public enterprise when 'loaning the school fund on real estate mortgages'. (citations) It follows that when foreclosing a mortgage securing a loan made from school land funds it is seeking to enforce a public as distinguished from a private right."

In the second paragraph of the syllabus in Wooten et al. v. State ex rel. Commissioners of Land Office, 191 Okl. 306, 129 P.2d 584, we used this language:

"When the State of Oklahoma on relation of the Commissioners of the Land Office seeks to recover an indebtedness created by loan from the school fund and to foreclose a real estate mortgage securing the same, it is acting in a sovereign capacity and seeks the enforcement of a public as distinguished from a property right and is therefore immune from the operation of the statute of limitations."

Also see, State ex rel. Commissioners of Land Office v. Whitfield et al., 200 Okl. 300, 193 P.2d 306; Board of Com'rs of Oklahoma County v. Good TP., Harper County, 188 Okl. 151, 107 P.2d 805.

█ If the Commissioners of the Land Office by affirmative action could not dispose of lands acquired through foreclosure of its mortgages, except as provided by 64 O.S. 1961, §§ 95 and 96, they could not divest title by inaction. It is therefore clear that the land in question was acquired by the Commissioners on behalf of the public and that a public right and not a private right was affected. This being true, the statute of limitations did not run against the Commissioners and title by prescription to the disputed land was not acquired by plaintiffs during the time title was in the State.

The sole remaining question is whether plaintiffs could acquire title by prescription to the disputed land after the Commissioners sold the land to Omer and Evelyn Sears under a Certificate of Purchase, but before a patent was issued to them under 64 O.S.1961, § 96. An excellent discussion of this matter is found in 55 A.L.R.2d 558. This annotation, beginning at page 559, states:

"With respect to states, the great preponderance of authority is to the effect that, *  *  * title to lands held by the state in any capacity cannot be obtained by adverse possession or prescription *  *  * as the state cannot be bound by the defaults or negligence of her officers or agents. This rule has been specifically applied in numerous cases concerning lands patented or granted by the state and in which an attempt was made to set up adverse possession prior to the patent and while title was, of course, still in the state *  *  * it being pointed out by more than one decision in that section that application of any other rule would be to advance the absurdity that the state could have a perfect title to land without the power of transferring a good title thereto, and that as the people cannot attend to their rights except through their officers they should not suffer by the lapse of time or through the negligence of those officers. *  *  *"

█ The sale of the disputed tract by the Commissioners of the Land Office to Omer and Evelyn Sears in the Fall of 1940, evidenced by a Certificate of Purchase, conveyed to them only an equitable title subject to cancellation under 64 O.S.1961, §§ 216.1 to 216.8. Legal title remained in the State until such time as the provisions of the Certificate of Purchase and applicable statutes were complied with, and up until such time title thereto could not be acquired by prescription. Equitable Royalty Corp. et al. v. State of Oklahoma on relation of the Commissioners of the Land Office, Okl., 352 P.2d 365; Horany v. State

of Oklahoma ex rel. Commissioners of Land Office, Okl., 375 P.2d 963.

Plaintiffs rely upon Frater Oklahoma Realty Corp. et al. v. Allen Laughon Hardware Co., 206. Okl. 666, 245 P.2d 1144; 2 C.J.S. Adverse Possession § 152g.; 2 C.J.S. Adverse Possession § 153b(2); and Kirchhoffer et ux. v. Harris et al., 68 Wash. 316, 123 P. 455, to sustain the trial court's judgment on defendants' second proposition.

As we understand plaintiffs' arguments on defendants' second proposition, they first contend that the Commissioners' mortgage lien covered only the land north of the fence, although the disputed tract south of the fence was included within the mortgage's legal description, because the fence existed before the execution of the mortgage. They further argue that the Commissioners did not obtain title to the disputed realty when foreclosing the mortgage, although it was included in the legal description of the Sheriff's Deed to the Commissioners. Plaintiffs cite Frater Oklahoma Realty Corp. et al. v. Allen Laughon Hardware Co., supra, as their authority for this argument.

■ We are unimpressed with this argument. Although the fence did exist prior to the execution of the mortgage, the undisputed facts show that title to defendants' forty acres (which includes the land in dispute) was in B. J. Horn and wife, at its execution. Title thereto by prescription could not have begun to run until long after that. They included the disputed tract south of the fence within the mortgage's legal description and the Commissioners thereby obtained a valid mortgage lien and title. Frater Oklahoma Realty Corp. et al. v. Allen Laughon Hardware Co., supra, deals with the creation of easement by implication and is not in point.

■ Secondly, plaintiffs contend that the foreclosure sale to the Commissioners did not interrupt the adverse possession previously started by plaintiffs and their predecessors in title, and cite 2 C.J.S. Adverse Possession § 152 g., 2 C.J.S. Adverse Possession § 153 b(2), and Kirchhoffer et ux. v. Harris et al., supra, in support thereof. The material cited by plaintiffs does not deal with a situation where public rights are involved and are therefore not in point. Although plaintiffs' adverse possession commenced before the State obtained title to the disputed realty, the bar of the statute of limitations was not complete at its acquisition by the State and should not afterwards run against the Commissioners.

In State ex rel. Land Office Com'rs v. Hall et al., supra, we quoted with approval from a decision of the Supreme Court of the United States in United States v. Nashville, Chattanooga and St. Louis Railway Co., 118 U.S. 120, 6 S.Ct. 1006, 1008, 30 L.Ed. 81; 128 P.2d at page 842:

"The court also held that although the United States acquired the obligations subject to pre-existing equities and defenses, the statute of limitations nevertheless ceased to run upon its acquisition thereof. On this point it was said:

"'* * * They take such paper subject to all of the equities existing against the person from whom they purchase at the time when they acquire their title; and cannot, therefore, maintain an action upon it if at that time all right of action of that person was extinguished, or was barred by the statute of limitations. * * *

"'But if the bar of the statute is not complete when the United States become the owners and holders of the paper, it appears to us, * * * impossible to hold that the statute could afterwards run against the United States. * * *' (Emphasis ours)".

The judgment of the trial court is reversed and remanded with directions to enter judgment for defendants in error in conformity with the above views.

BLACKBIRD, C. J., and DAVISON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.