2006 OK CIV APP 1

Charyl L. WARD, Plaintiff/Appellee,

v.

STATE of Oklahoma ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.

No. 101,709.

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 6, 2005.

Mack K. Martin, Martin Law Firm, and George S. Corbyn, Jr., Kathryn M. Zynda, Corbyn Law Firm, Oklahoma City, OK, for Plaintiff/Appellee.

J. Robert Blakeburn, Department of Public Safety, Oklahoma City, OK, for Defendant/Appellant.

Opinion by JANE P. WISEMAN, Judge.

¶1 The Department of Public Safety (DPS) appeals from an order overruling DPS's motion to reconsider the trial court's decision to set aside the revocation of Charyl L. Ward's driver's license. The issue on appeal is whether the trial court abused its discretion when it overruled DPS's motion to reconsider. We conclude the trial court did not abuse its discretion and affirm its decision.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Christian Wright, a police officer for the University of Oklahoma Health Science Center, arrested Ward for driving under the influence on January 27, 2004. DPS revoked Ward's driver's license for one year begin-

ning May 21, 2004. DPS found that the officer "had observed sufficient facts to reasonably believe" Ward was operating a motor vehicle while under the influence of alcohol or other intoxicating substance. DPS revoked Ward's license because she refused to submit to a chemical test to determine her blood alcohol level.

¶ 3 Ward filed a petition in the District Court of Oklahoma County, asserting that the officer did not have reasonable grounds to stop her. At trial, Officer Wright testified that he witnessed Ward driving her car on the wrong side of Northeast 8th Street which borders the OU Health Science Center campus. After he observed her driving on the wrong side of the road, he attempted to stop her. By the time he was able to catch up with the car, Ward had already made a left-hand turn onto Stonewall Avenue which is not within the university's jurisdiction. He stated, "My original reason when I stopped her to think—other than the traffic violation, was thinking she was probably lost. We have people in that area all the time that will travel the wrong direction on the street or whatever. They get lost in that area. That was my original thinking. Well, you know, she's probably just lost."

¶ 4 The officer testified that, when Ward made the left turn onto Stonewall, he was within ten car lengths of her vehicle. He then initiated his lights because he was going to have to go through a red light to stop her. Ward then made a right-hand turn onto 7th Street and "[s]he was about a block south of university jurisdiction." Ward stopped her car soon after she made the second turn.

¶ 5 The officer asked Ward for her license and insurance verification. He claimed that Ward's speech was slurred, she was "very confused", there was an odor of alcohol coming from Ward and her car, and he had to hold her up as he walked her back to his car. The officer did not administer any field sobriety tests and Ward refused to take a chemical test.

¶ 6 On cross-examination, the officer admitted that when he initiated his lights Ward was no longer on university property and the actual stop did not occur within university jurisdiction. He also admitted he did not

have a copy of the jurisdictional agreement between the university and Oklahoma City that authorizes campus police to exercise jurisdiction outside campus boundaries.

¶ 7 The trial court announced its findings at the conclusion of the hearing. The court concluded that the stop was made outside the jurisdictional limits of the university and the doctrine of fresh pursuit did not apply because there was no evidence that Ward was speeding or attempting to elude. The court stated that its main reason for vacating the revocation was its belief "from the testimony that this stop was really made because the officer, out of concern for this Plaintiff, thought that she was lost and that he only determined after he had stopped her that she apparently appeared to have been drinking."

¶ 8 DPS filed a motion to reconsider the trial court's decision, and the trial court overruled the motion.

¶ 9 DPS appeals.

## STANDARD OF REVIEW

■ ¶ 10 A "motion to reconsider" is not recognized in Oklahoma procedural statutes, but is regarded, if timely filed, as a motion for new trial made under 12 O.S.2001 § 651. *Pierson v. Canupp,* 1988 OK 47, n. 1, 754 P.2d 548, 550. A district court exercises broad legal discretion when it considers a motion for new trial. *Dominion Bank of Middle Tenn. v. Masterson,* 1996 OK 99, ¶ 16, 928 P.2d 291, 294. Unless the court either clearly erred in resolving a "pure simple question of law" or acted arbitrarily, we will not disturb its refusal to grant a new trial. *Id.*

¶ 11 Although DPS filed the motion to reconsider within ten days of the pronouncement of the trial court's findings, it filed the motion prematurely because no final judgment had been entered. A motion for new trial filed "after the announcement of the decision on all issues in the case but before the filing of the judgment or decree shall be deemed filed immediately after the filing of the judgment or decree." 12 O.S. Supp.2001 § 653(C)

¶ 12 To determine if the trial court abused its discretion in refusing to grant the motion to reconsider, we must examine the trial court's decision to set aside the revocation of Ward's driver's license. When reviewing an order on an implied consent revocation, this Court may not reverse or disturb the trial court's decision unless it is erroneous as a matter of law or without "sufficient evidentiary foundation." *Abdoo v. State ex rel. Dep't of Pub. Safety,* 1990 OK CIV APP 2, ¶ 11, 788 P.2d 1389, 1393.

## DISCUSSION

¶ 13 The law of implied consent in Oklahoma provides that "[a]ny person who operates a motor vehicle upon the public roads, highways, streets, turnpikes or other public place ... within this state shall be deemed to have given consent to a test or tests of such person's blood or breath, for the purpose of determining the alcohol concentration." 47 O.S. Supp.2004 § 751(A)(1). If a driver, reasonably suspected of driving while under the influence of alcohol, refuses to consent to the State's test, DPS "shall revoke" her driver's license. 47 O.S.2001 § 753. *See generally Pletcher v. State ex rel. Dep't of Pub. Safety,* 2003 OK 117, ¶ 4, 84 P.3d 725, 727.

¶ 14 However, "[u]nder Oklahoma's Implied Consent Law, a valid arrest is necessary to authorize a police officer to request submission to a chemical test for blood alcohol." *Dahl v. State ex rel. Dep't of Pub. Safety,* 2002 OK CIV APP 15, ¶ 9, 38 P.3d 941, 943 (citing *White v. Okla. Dep't of Pub. Safety,* 1980 OK 21, ¶ 6, 606 P.2d 1131, 1132). The issue before us is whether the university police officer had jurisdiction to stop Ward and make a valid arrest.

¶ 15 Title 74 O.S.2001 § 360.17 delineates the jurisdiction of campus police officers:

> A. *The jurisdiction of campus police officers includes the campus and pursuant to an agreement authorized by this act, the highways, streets, roads, alleys, easements, and other public ways immediately adjacent to their campus and any other areas authorized by such agreement. This delineation of jurisdiction, however, shall not be understood as limiting the comple-tion of any necessary enforcement activities which began within these jurisdictions and are in compliance with the agreements made with the municipality or county sheriff pursuant to this act.* In the absence of an agreement, only those law enforcement activities which began on campus may be completed off campus and such activities must be completed in a timely manner. Such law enforcement activities shall only be authorized if the campus police have coordinated the activities with the local law enforcement agency having jurisdiction in that off campus area. In addition, a campus police officer shall have jurisdiction in other locations pursuant to an agreement authorized by this act. Such agreement may authorize the chief administrative officer of the law enforcement agency to request assistance pursuant to the agreement. Campus police officers, commissioned pursuant to this act, shall have the same powers, liabilities, and immunities as sheriffs or police officers within their jurisdiction. (Emphasis added).

¶ 16 The campus police officer testified that the university had a written jurisdictional agreement with Oklahoma City "for areas on campus as well as areas slightly off campus." When asked on cross-examination if he had a copy of the agreement at the hearing, he stated that he did not. On further inquiry, Officer Wright stated he had seen a copy of the agreement and "it basically just shows our boundaries" which are essentially the same "within a few exceptions" as the map of the area admitted into evidence. The officer also testified that, when he turned on his lights to initiate his stop, Ward had turned onto Stonewall Avenue which was outside the university's jurisdiction and the actual stop and arrest on 7th Street occurred outside the university's jurisdiction. In summary, the officer witnessed a traffic offense committed within the university's jurisdiction (8th Street), initiated his lights after Ward had left the university's jurisdiction (Stonewall Avenue), and made the stop and arrest outside the university's jurisdiction (7th Avenue).

¶ 17 The existence of a jurisdictional agreement, as contemplated under § 360.17, is undisputed in this case, but we are unable to determine its provisions or extent because the record is silent on these crucial points. The drafters of § 360.17 clearly contemplated this set of facts in providing that the completion of enforcement activities which began within the campus jurisdiction would not be limited by the agreement's delineation of jurisdiction **if the activities "are in compliance with the agreements made with the municipality."** (Emphasis added.)

¶ 18 Without the agreement and with a record silent on the terms of the agreement which might be dispositive, we have no evidence on which to conclude that the officer's off-campus enforcement activities complied with the jurisdictional agreement with the City of Oklahoma City. The absence of this evidence is fatal to DPS's appeal. We must conclude, absent evidence of appropriate contractual authorization pursuant to § 360.17, that the officer had no authority to complete his enforcement activities outside his jurisdictional boundaries.

¶ 19 DPS contends that the "fresh pursuit" doctrine applies to the officer's actions. We find it unnecessary to address this contention because § 360.17 expressly delineates the "fresh pursuit" authority of campus police to complete law enforcement activities outside their jurisdictional boundaries.

## CONCLUSION

¶ 20 We find that the trial court did not err in vacating the order of revocation and did not abuse its discretion in denying DPS's motion to reconsider. The order of the trial court is therefore affirmed.

¶ 21 AFFIRMED.

REIF, P.J., and GABBARD, J., concur.