2014 OK CIV APP 106

Janice E. WALDROP, Plaintiff/Appellant,

v.

The HENNESSEY UTILITIES AUTHORITY, a Public Trust; and the Trustees thereof; and the Town of Hennessey, a Municipal Corporation, Defendants/Appellees.

No. 112,894.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 2, 2014.

Richard M. Fogg, Fogg Law Firm, El Reno, Oklahoma, for Appellant.

Floyd W. Taylor, Taylor Law Firm, P.L.L.C., Oklahoma City, Oklahoma, Frank E. Walta, Walta & Walta, Hennessey, Oklahoma, for Appellees.

LARRY JOPLIN, Presiding Judge.

¶ 1 Plaintiff/Appellant Janice E. Waldrop (Plaintiff) seeks review of the trial court's order denying her Motion to Reconsider its previous order granting the Motion for Summary Judgment of Defendants/Appellees the Hennessey Utilities Authority, a Public Trust, the Trustees thereof, and the Town of Hennessey, a Municipal Corporation (collectively, Town or Defendants) on Plaintiff's claim of title to real property by adverse possession. In this appeal, Plaintiff asserts the trial court erred as a matter of both law and fact in holding property owned by Defendants impervious to a claim of adverse possession.

¶ 2 By Petition filed March 9, 2012, Plaintiff alleged that she was the owner of an irregularly shaped tract of land located in Section 23, Township Nineteen (19) North, Range Seven (7) West, I.M., Kingfisher County, Oklahoma, bounded by a fence erected by Defendants on the northern boundary, and that Defendants owned the property north of the fence on which were maintained sewage lagoons. Plaintiff further alleged that the fence had been in place for a period of more than the fifteen year prescriptive period, and that she had exercised open, continuous, exclusive, adverse and notorious possession of the property south of the fence ever since, such that she was now owner of all real property south of the fence by adverse possession.

¶ 3 Defendants filed a motion for summary judgment, to which they attached evidentiary materials demonstrating that the Defendant Hennessey Utilities Authority was a public trust, and the Town of Hennessey was a municipal corporation and political subdivision of the State of Oklahoma. Defendants asserted that, as a matter of law, a claim of prescriptive title would not lie against real property owned by the political subdivisions of this state for the use and benefit of the public. *See, Mobbs v. City of Lehigh,* 1976 OK CIV APP 4, 548 P.2d 1048; *Sears v. Fair,* 1964 OK 239, 397 P.2d 134; *Merritt Independent School Dist. No. 2 of Beckham County v. Jones,* 1952 OK 381, 249 P.2d 1007; *Town of Chouteau v. Blankenship,* 1944 OK 275, 152 P.2d 379.

¶ 4 Plaintiff responded, and argued that the bar to a claim of adverse possession against a political subdivision was based on the common law doctrine of sovereign immunity, but that the doctrine of sovereign immunity had been abandoned in Oklahoma, and "governmental immunity must now be established statutorily." *JMA Energy Co., LLC v. State ex rel. Dept. of Transp.,* 2012 OK CIV APP 55, ¶ 16, 278 P.3d 1053, 1056. *See also, Fehring v. State Ins. Fund,* 2001 OK 11, 19 P.3d 276; *McCathern v. City of Oklahoma City,* 2004 OK 61, 95 P.3d 1090; *Vanderpool v. State,* 1983 OK 82, 672 P.2d 1153. So, said Plaintiff, because the political subdivisions of this state no longer enjoyed the protection of sovereign immunity, there existed no bar to a claim of adverse possession against a political subdivision.

¶ 5 The parties appeared for a hearing. Upon consideration of the parties' submissions and arguments, the trial court granted the motion for summary judgment of Defendants. Plaintiff filed a motion to reconsider, which the trial court denied. Plaintiff appeals, and the matter stands submitted on the trial court record.[1]

¶ 6 "Summary judgment is appropriate only where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Wathor v. Mutual Assur. Adm'rs, Inc.,* 2004 OK 2, ¶ 4, 87 P.3d 559, 561. (Citation omitted.) "As this decision involves purely legal determina-

---

1. *See,* Rule 13(h), Rules for District Courts, 12 O.S.2011, Ch. 2, App.; Okla.Sup.Ct.R. 1.36, 12 O.S.2011, Ch. 15, App. 1.

tions, our standard of review of a trial court's grant of summary judgment is *de novo* [, and w]e review all inferences and conclusions to be drawn from underlying facts contained in evidentiary materials in a light most favorable to the party opposing the motion." *Id.* "Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 11, 160 P.3d 959, 963. "Summary judgment will be reversed if the appellate court determines that reasonable men might reach different conclusions from the undisputed material facts." *Id.*

¶ 7 A motion for reconsideration may be regarded as a motion for new trial under 12 O.S. § 651, or a motion to vacate under 12 O.S. § 1031.1. *McMillian v. Holcomb*, 1995 OK 117, ¶ 7, 907 P.2d 1034, 1036, fn. 3. Absent some pure error of law, the trial court's ruling on a motion to reconsider will not be disturbed unless affected by an abuse of discretion. *Ward v. State ex rel. Dept. of Public Safety*, 2006 OK CIV APP 1, ¶ 10, 127 P.3d 643, 644. Where, as here, the assessment of the trial court's exercise of discretion in denying a motion to reconsider depends on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our *de novo* review of the summary adjudication's correctness. *Reeds v. Walker*, 2006 OK 43, ¶ 9, 157 P.3d 100, 106–107. (Footnotes omitted.)

¶ 8 "[R]ooted deep in Anglo–American law" is the theory "that time does not run against the king, as illustrated by the Latin maxim, 'nullum tempus occurrit regi,' or against the state, 'reipublicae.'" *State ex rel. Central State Griffin Memorial Hospital v. Reed*, 1972 OK 14, ¶ 15, 493 P.2d 815, 817. (Citation omitted.) In recognition of this theory, it is generally accepted that "the maxim 'Nullum tempus occurrit regi' . . . applies to municipal corporations as trustees of the rights of the public, and protects from invasion and encroachment the property of the municipality which is held for and devoted to public use, no matter how lax the municipal authorities have been in asserting the rights of the public." *Mobbs*, 1976 OK CIV APP 4, ¶ 22, 548 P.2d at 1052–53.

¶ 9 In this respect, we concede the common law doctrine of sovereign immunity from liability has been substantially eroded and replaced by statutory enactments in this state. *See, JMA Energy Co., LLC*, 2012 OK CIV APP 55, ¶ 16, 278 P.3d at 1056. However, the bar to claims of prescriptive title to property held for the public benefit by the political subdivisions of this state is based, *not* upon the immunity from tort liability enjoyed at common law by the state or its subdivisions, but rather, on the rights of the public to the property:

> In this State the statute of limitations is not operative against the State or its subdivisions where public rights are involved. The determining factor is whether the right affected is a private right or a public right. The test as to whether a matter is a public right or a private right appears to be whether the right is such as to affect the public generally or to merely affect a class of individuals within the political subdivision.

*Sears*, 1964 OK 239, ¶ 22, 397 P.2d at 137. *Accord, Merritt Independent School Dist. No. 2 of Beckham County*, 1952 OK 381, ¶ 9, 249 P.2d at 1009 [2]; *Town of Chouteau*, 1944 OK 275, ¶ 0(4), 152 P.2d 379.[3]

¶ 10 So, as long as real property is impressed with, held for or dedicated to a valid public use by a public trust or political subdivision, a claim of prescriptive title will not lie, but when such public use is abandoned in the manner required by law, there

---

**2.** "The general rule is that title by adverse possession may be acquired against all persons, except those excepted from the operation of the statute of limitations. Ordinarily limitations will not run against the state or its subdivisions, unless they are expressly included as being within the operation of the statute. In this State the statute of limitations is not operative against the state or its subdivisions where public rights are involved. The determining factor is whether the right affected is a private right or a public right."

**3.** "In the absence of a statute to the contrary, the title to streets created by dedication is held by the municipality in trust for the public, and not in a proprietary capacity, and, since the municipality is without power to alienate the same, it cannot be divested of title thereto by adverse possession for the prescriptive period."

is no bar to an adverse possession claim. *See, WRT Realty, Inc. v. Boston Inv. Group II, L.L.C.,* 2012 OK CIV APP 82, ¶ 36, 287 P.3d 397, 410 [4]; *Mobbs,* 1976 OK CIV APP 4, ¶ 27, 548 P.2d at 1053 [5]; *Sears,* 1964 OK 239, ¶ 16, 397 P.2d at 138 [6]; *Merritt Independent School Dist. No. 2 of Beckham County,* 1952 OK 381, ¶ 15, 249 P.2d at 1009.[7] But, such abandonment of the public use is not shown by mere non-use. *Town of Chouteau,* 1944 OK 275, ¶ 0(2), 152 P.2d 379.[8]

¶ 11 In the present case, the property having once been acquired for the construction and maintenance of Defendants' sewage lagoons, the property could not, by mere non-use or acquiescence to the placement of the fence, be divested of its intended valid public use for which it was acquired without affirmative act of the Defendants to relinquish or abandon that public use. So impressed with and held for a valid public purpose, Plaintiff's claim of prescriptive title to the property would not lie. The trial court did not err in so holding.

¶ 12 The orders of the trial court denying Plaintiff's motion to reconsider and granting Defendants' motion for summary judgment are AFFIRMED.

HETHERINGTON, V.C.J., and BUETTNER, J., concur.

4. "Tulsa abandoned its right to a street easement over the Disputed Property in 1902. When the railroad abandoned its easement sometime prior to 1984, Lot 1, Block 6, and Lot 1, Block 20, were unencumbered by either a street or railroad easement. At that point title to the properties, including the twenty foot strip along the south border of Block 6, could be acquired by adverse possession...."

5. "The appellant [City], once acquiring the land, c[ould] only dispose of it by statutory means. The precise manner is dictated by 11 O.S.1971, § 441. Therefore, unless authorized by statute, a court cannot judicially deprive a town of its property, and any judgment to the contrary is void."

6. "[Since] the Commissioners of the Land Office by affirmative action could not dispose of lands acquired through foreclosure of its mortgages, except as provided by 64 O.S.1961, §§ 95 and 96, they could not divest title by inaction. It is therefore clear that the land in question was acquired by the Commissioners on behalf of the public and that a public right and not a private right was affected. This being true, the statute of limitations did not run against the Commissioners and title by prescription to the disputed land was not acquired by plaintiffs during the time title was in the State."

7. "[Since] the school board by affirmative action could not dispose of school property, except as provided by statute, it could not divest the title by inaction."

8. "Proof of nonuser of a street in an incorporated town created by dedication, without also proving affirmative official acts of the board of trustees clearly showing an intention to abandon the street, is insufficient to establish abandonment of the street."